UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANGEL BAILEY | * | CIVIL ACTION |
| VERSUS | * | NO. 22-295 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | * * | SECTION "L" DIV. (2) |

## REPORT AND RECOMMENDATION

Pursuant to § 405(g) of the Social Security Act ("the Act"), Plaintiff Angel Bailey seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II and Part A of Title XVIII of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Plaintiff Angel Bailey is now a 54-year-old woman who filed an application for DIB alleging disability commencing on May 24, 2019.  ECF No. 15-5 at 4.  Her relevant work history includes employment in a composite of three jobs: phone operator, fitting room associate, and salesperson.  ECF No. 15-6 at 15-16.    Her age classification is "closely approaching advanced age."  20 C.F.R. §§ 404.1563(d).  She alleges disability due to lumbar facet disease, lumbar disc disease, and lumbar radiculopathy.  ECF No. 15-3 at 5, 15.

Bailey applied for DIB on August 30, 2019.  ECF No. 15-5 at 4.  Her application was denied at the agency level on January 6, 2020.  ECF No. 15-3 at 11.  Plaintiff  requested reconsideration on March 13, 2020 (ECF No. 15-3 at 12), and the claim was denied on

---

[1] 42 U.S.C. §§ 405(g).

reconsideration on August 3, 2020.  *Id*. at 23.  Bailey filed a request for a hearing before an Administrative Law Judge ("ALJ") (ECF No. 15-4 at 19), and the matter was heard on April 13, 2021 before ALJ Holly Hansen.  ECF No. 15-2 at 27-51.  Bailey appeared and testified at the hearing and was represented by counsel, Adam M. Meunier.  *Id*. at 27.  Thomas Mungall, an impartial vocational expert, also appeared and testified at the hearing.  *Id*.

On May 7, 2021, in response to a draft ALJ opinion in her online portal, Plaintiff filed an "Urgent Motion to Reconsider Decision" in which she claimed there was a "substantial [and clear] error of law at Step 5."  Bailey argued that the ALJ denied her application for benefits based on the identification of only one job that she could perform, and the VE's testimony that 69,000 such positions exist in the national economy was "highly inaccurate" because the Bureau of Labor and Statistics ("BLS") report indicates only 4,630 such occupations exist nationwide.[2]

On May 12, 2021, ALJ Hansen issued a decision denying Bailey's application for DIB.[3] Plaintiff filed a request for review by the Appeals Council on June 16, 2021, attaching an "Urgent Motion to Reverse ALJ Decision" raising the same argument and evidence included in her May 7, 2021 post-hearing motion.[4]  Plaintiff filed two more "Urgent Motion[s] to Reverse ALJ Decision" on June 22, 2021 and July 28, 2021.[5]  On November 29, 2021, the Appeals Council issued a denial of Plaintiff's request for an appearance but informed her that she may submit additional information.[6]

Plaintiff's counsel filed another "Urgent Motion to Reverse ALJ Decision" on December 8, 2021 raising the same arguments and referencing the same BLS report.[7]  The Appeals Council

---

[2] ECF No. 15-7 at 31-39.
[3] ECF No. 15-2 at 10-12, 13-51.
[4] ECF No. 15-4 at 69-70, 15-7 at 29-
[5] ECF No. 15-8 at 2-3, 13-14.
[6] ECF No. 15-4 at 71-72.
[7] ECF No. 15-8 at 24-25.

made each of Plaintiff's post-hearing motions and accompanying evidence part of the record on January 10, 2022.[8]  The Council considered Plaintiff's reasons for disagreement with the ALJ's decision but found that they "did not provide a basis for changing the ALJ's decision."[9]  After the Appeals Council denied review on January 10, 2022, the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review.[10]   Bailey filed this action on February 2, 2022.[11]  In accordance with this Court's Scheduling Order, Bailey filed a motion for summary judgment on September 7, 2022, and the Commissioner filed a cross-motion for summary judgment on October 12, 2022.[12]

## II.    STATEMENT OF ISSUES ON APPEAL

Bailey identifies one issue for appeal:

The Commissioner failed to carry her burden of proof at Step 5, as, per the ALJ's findings, Plaintiff is incapable of performing work which exists in significant numbers in the national economy.  Additionally, the ALJ relied on clearly erroneous job numbers.[13]

## III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since May 24, 2019, the alleged onset day (20 CFR 404.1571 et seq.).

3.  The claimant has the following severe impairments: lumbar impairment, myasthenia gravis, and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[8] ECF No. 15-2 at 6.
[9] *Id*. at 2.
[10] *Id*.
[11] ECF No. 1.
[12] ECF Nos. 16, 17, 20.
[13] *See* ECF No. 17-1 at 3.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally balance and stoop, but never kneel, crouch, crawl, or climb. She requires a sit/stand option where she would need to stand for ten minutes each hour with no break in the work process, as she would just be changing position.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 7, 1968 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 04.1563).

8. The claimant has a high school education (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education work experience, and residual capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.169, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2019, through the date of this decision (20 CFR 404.1520(g)).

## IV.  ANALYSIS

### A.  Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[14]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[15]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[16]  The

---

[14] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[15] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[16] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).

Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[17] This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[18] The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[19]

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[20] The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[21]

To be considered disabled and eligible for SSI,[22] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[23] A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[24] To qualify as a disability, the impairment must

---

[17] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[18] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[19] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *1 (E.D. La. Nov. 23, 2009) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).
[20] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[21] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).
[22] The relevant law and regulations governing claims for disability insurance benefits and SSI are identical. *Carmon v. Barnhar*t, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[23] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[24] 42 U.S.C. § 423(d)(3).

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[25]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[26]  Thus, to be considered disabled and eligible for benefits, the Claimant must prove her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity.[27]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[28]  "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[29]  The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[30]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[31]

---

[25] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).
[26] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).
[27] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[28] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.
[29] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).
[30] *Id.* at 448.
[31] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

### B. **Factual Background**

Plaintiff was 50-years old (now 54) at the time of filing her DIB claim and has a high school education.  ECF Nos. 15-5 at 4; 15-6 at 4.  She worked for Walmart for approximately thirty years and, from 2006 until she left in May 2019 due to back pain, she was a telephone operator and sales floor associate.  ECF No. 15-2 at 31-32, 33, 40.

Plaintiff took a leave of absence from May 24, 2019 through July 26, 2019, using a combination of her paid time off, sick time, and Walmart's short-term disability program.  ECF No. 15-2 at 33.  She returned to work on July 26, 2019 and worked for eight days before she was informed that her health restrictions could not be accommodated and she was due for a leave of absence.  *Id.* at 34-35.  At that time, her doctor had issued restrictions of walking and standing for no more than thirty minutes at one time, with a two-hour total, and sitting for no more than one hour at a time, with a four-hour total.  *Id.* at 35-36.  She did not return to work after being advised that her restrictions could not be accommodated.

Upon questioning from her counsel, Plaintiff testified that she would not be able to sustain a full-time job because of burning and radiating pain in her back that requires her to lie down four to five times per day.  *Id.* at 36-37.  Bailey's Function Report indicates that the protruding disc in her lower back causes constant pain which makes bending, lifting, climbing, pulling, and reaching difficult.  ECF No. 15-6 at 20.  She can stand for no longer than fifteen minutes at a time and sit for an hour maximum.  *Id.* at 39.  She does not need reminders for personal needs, grooming, or medication, but does sometimes ask her husband for assistance getting out of the shower.  *Id.* at 21, 40.  She prepares her own meals with the assistance of a chair.  *Id.* at 21, 24.  She can perform light housework such as folding clothes and wishing dishes from a seated position.  *Id.* at 21.  She

attends church, and visits family on a regular basis but has missed some engagements due to back pain. *Id*. at 22.

### C. <u>Vocational Expert Testimony</u>

Vocational expert Thomas Mungall testified at the hearing. The ALJ made his resume part of the administrative record, and Mungall confirmed it to be a true description of his professional qualifications, which include roughly thirty-five years as a vocational expert under contract with the Administration and twenty-five years as a private practice vocational rehabilitation counselor. Plaintiff's counsel raised no objections to Mr. Mungall's qualifications. ECF No. 15-2 at 46.

Mungall classified Plaintiff's work at Walmart as a composite of three occupations—telephone operator, DOT reference 235.662-022, sedentary, SVP: 3; sales attendant, DOT reference 299.677-010, strength level light, SVP: 2; and stores laborer, DOT reference 922.687-058, strength level medium, SVP: 2. *Id*. at 47. He categorized the composite as level medium with an SVP of 3. *Id*. at 48. Mungall confirmed, upon questioning from the ALJ, that his testimony was consistent with the DOT. *Id*.

ALJ Hansen asked Mungall to identify any skills from Bailey's past relevant work that would transfer into a sedentary, semi-skilled occupation. *Id*. at 48. The VE responded that Plaintiff's skills would directly transfer into the telephone ("PBX") operator position he previously identified, of which there are 69,000 positions nationwide. *Id*. Specifically, Bailey's skills of speaking, conveying information effectively, active listening, attention, understanding, appropriately asking questions, social perceptiveness and awareness, reading comprehension, service orientation, problem solving, and effective written communication could transfer into the phone operator position. *Id*. at 48-49. Mungall did not identify any other jobs at the sedentary level with those skills. *Id*. at 49.

In further exploring available work in the national economy, the ALJ next posed a hypothetical based on an individual of the same age, education, and work experience who is limited to sedentary work, can occasionally balance and stoop, never kneel, crouch, crawl, or climb, and would require a sit/stand option where she would need to stand for ten minutes each hour with no break in the work process. Mungall testified that Bailey's past relevant work would not be available under these conditions since it was a composite job, but the telephone operator position would still be intact. *Id.* at 49. ALJ Hansen asked if that conclusion was consistent with the DOT, to which Mungall responded affirmatively, but noted that the DOT "doesn't really address such issues as [the] sit/stand option" but his "answer is based on [his] experience with that occupation and doing job analyses of that occupation." *Id.* at 49.

Altering the hypothetical, the ALJ asked if there would be any work available to the same individual if she also needed at least two additional 15-minute breaks during the workday. *Id.* at 50. Mungall testified that there would not be any such work available on a full-time competitive basis. *Id.* Mungall stated that this testimony was not inconsistent with the DOT, but that the DOT is "silent on such issues" and the conclusion was based on "35 plus years' experience as a Vocational Rehabilitation Counselor and [his] education." *Id.*

The ALJ provided Bailey's counsel an opportunity to question the VE. *Id.* at 50. Plaintiff's counsel questioned Mungall about the projected growth of the identified telephone operator position, and the VE confirmed that the projected growth of the position was on the decline and that there were only 4,000 projected job openings for the position between 2019-2029. *Id.* at 50. Plaintiff's counsel did not ask Mungall where he obtained the 69,000 number for nationwide telephone operator positions, nor did he cast doubt on the statistic nor present evidence to the contrary at the hearing. Plaintiff's counsel instead moved on and presented a hypothetical based

on the treating neurologist's opinion—"sitting one hour, four hours total; walking and standing, 30 minutes at one time, 2 hours total; occasional lift, carry of less than 10 pounds. No stooping or squatting." *Id.* at 50-51. Mungall testified that these restrictions would preclude a person from performing Plaintiff's past relevant work or the jobs he identified on a full-time competitive basis. *Id.* at 51.

### D. **Medical Evidence**

I have reviewed the medical records and the ALJ's summary of the medical evidence. ECF Nos. 15-9, 15-10, 15-11, 15-12, 15-13, 15-14. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference. Plaintiff does not raise any issues with the medical evidence or conclusions on appeal.

### E. **Plaintiff's Appeal**

At step 1, the ALJ determined that Bailey meets the insured status requirements through December 31, 2023, and that she had not engaged in substantial gainful activity since May 24, 2019.[32] At step 2, the ALJ found severe impairments of lumbar impairment, myasthenia gravis, and obesity (20 C.F.R. § 404.1520(c)) that significantly limit the ability to perform basic work activities.[33] At step 3, the ALJ found that, considering all of Plaintiffs medically determinable impairments, she did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment.[34]

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with certain specified limitations.[35] At step 4, ALJ Hansen determined that Plaintiff is unable to perform past

---

[32] ECF No. 15-2 at 15.
[33] *Id.* at 16.
[34] *Id.*
[35] *Id.*

relevant work as a composite of telephone operator (DOT 235.662-022), sales attendant (DOT 299.677-010), and stores laborer (DOT 922.687-058) as that work requires performance of work-related activities precluded by her RFC.[36]  At step 5, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.[37]

Plaintiff objects to the ALJ's analysis and conclusions in the fifth step, contending that the Commissioner failed to carry her burden of proof as Plaintiff is incapable of performing work which exists in significant numbers in the national economy.[38]  Plaintiff also asserts that the ALJ improperly relied on VE testimony and clearly erroneous job numbers because it was legally insufficient to rely on only one job presented by the VE, it was "unclear" that this job existed in significant numbers, and the VE's testimony was not supported by information from accepted publications such as the U.S. Bureau of Labor and Statistics (BLS).[39]  Plaintiff cites a 2020 BLS report that indicates 4,630 telephone operator jobs exist in the U.S. economy as proof that there are only isolated jobs in limited numbers and in relatively few locations in the country and thus, Bailey should have been approved.[40]

### F.  Commissioner's Argument

In her cross-motion for summary judgment, the Commissioner contends that Plaintiff's argument fails because the ALJ carefully considered the vocational expert's testimony in accordance with the DOT.[41]  The Commissioner also asserts that Plaintiff was not entitled to a

---

[36] *Id*. at 20-21.
[37] *Id*. at 21-22.
[38] ECF No. 17-1 at 4.
[39] *Id*.
[40] *Id*. at 4-5.
[41] ECF No. 20-1 at 2, 3-5.

post-hearing brief under Social Security procedures, Plaintiff's attorney did not request time to file such a brief, the ALJ closed the record at the hearing without objection, and Plaintiff thus forfeited her right to have the ALJ provide an analysis of the evidence submitted with her post-hearing motion.[42]

The Commissioner next argues that the ALJ was entitled to rely on the VE's response that his testimony was consistent with the DOT because the ALJ affirmatively inquired and obtained explanations for apparent conflicts between VE testimony and the DOT as required by Social Security Ruling 00-4p and an ALJ may properly rely on VE testimony to demonstrate the existence of a significant number of jobs a plaintiff can perform.[43]  The Commissioner notes that the governing regulations list the DOT as a reliable source for information regarding jobs that exist in the national economy of which the Agency may take administrative notice and that Plaintiff instead relies on a "much narrower job description of telephone operator from BLS [to] support her position that there were only 4,630 telephone operator jobs in the entire national economy."[44] Therefore, the Commissioner argues, Plaintiff fails to provide comparable evidence to contradict the ALJ's reliance on the VE's testimony based on the DOT.[45]

The Commissioner also argues that Plaintiff's appeal should fail because Plaintiff's counsel had an opportunity to cross-examine the VE and present contradictory evidence at the hearing and failed to do so.[46]  In response to Plaintiff's argument that the ALJ failed in not obtaining evidence on the number of jobs for three different jobs, the Commissioner notes that courts within the Fifth Circuit have held that a showing of the existence of only one job with a significant number of

---

[42] *Id*. at 4.
[43] *Id*. at 5.
[44] *Id*. at 6.
[45] *Id*. at 7.
[46] *Id*.

available positions satisfies the step five burden.[47]  Finally, the Commissioner argues that the Fifth Circuit and courts within have held that the existence of 50,000 jobs in the national economy provides substantial evidence of a significant number of jobs.[48]

### G.  ALJ's Step Five Analysis

If a claimant establishes at step four that she is unable to perform her past relevant work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work which exists in the national economy.[49]   The inquiry involves whether work the claimant can perform exists "in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."[50]  The Social Security Act clarifies that, with respect to any individual, "work which exists in the national economy" means "work which exists in *significant numbers* either in the region where such individual lives or in several regions of the country."[51]  The Fifth Circuit has not established a bright-line rule regarding what constitutes a "significant number" of jobs for purposes of step five of the sequential analysis.[52]

#### i.    Vocational Expert Evidence

For guidance at step five, ALJs often employ "vocational experts" ("VEs") to provide impartial testimony in agency proceedings.[53]  An ALJ satisfies her burden at the fifth step either

---

[47] *Id*.

[48] *Id*. at 8.

[49] *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987)).

[50] 42 U.S.C. § 423(d)(2)(A).

[51] *Id*. (italics added). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

[52] *Pickar v. Comm'r of Soc. Sec*., No. 22-0066, 2022 WL 16935255, at *8 (N.D. Tex. Oct. 27, 2022) (citing *Jackson v. Berryhill*, No. 16-2957, 2017 WL 4457539, at *3 (N.D. Tex. Sept. 11, 2017), *R&R adopted*, 2017 WL 4410812 (N.D. Tex. Oct. 3, 2017) ("The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined what constitutes a 'significant number' of jobs.")), *R&R adopted*, 2022 WL 16927803 (N.D. Tex. Nov. 14, 2022); *see also Johnson v. Astrue*, No. 11-3030, 2012 WL 5472418, at *16 (E.D. La. Oct. 5, 2012) (citing *Kelly v. Astrue*, No. 10-1198, 2011 WL 3563197, at *17 (E.D. La. June 27, 2011); *Alexander v. Comm'r. of Soc. Sec.,* No. 08–1570, 2010 WL 2571980, at *4 (W.D. La. June 8, 2010), *judgment modified on other grounds*, 2010 WL 2484219 (W.D. La. June 10, 2010), *aff'd*, 412 F. App'x 719 (5th Cir.2011)).

[53] *Biestek*, 139 S. Ct. at 1152.

by relying on the medical-vocational guidelines contained in Appendix 2 of the Social Security regulations or by obtaining the testimony of a VE.[54]    VEs must have "expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs."[55]    The Fifth Circuit has held that it is proper for an ALJ to rely on VE testimony to demonstrate the existence of significant number of jobs in the national economy that a claimant can perform.[56]    Vocational experts are not categorically required to provide their underlying data or methodology.[57]

Before relying on VE testimony to support a disability determination, however, an ALJ must "identify and obtain a reasonable explanation for any conflicts between [VE evidence] and information in the Dictionary of Occupational Titles ("DOT") and "explain in the determination or decision how any conflict that has been identified was resolved."[58]    Notably, while this regulation requires ALJs to identify and obtain explanations for conflicts between VE evidence and the DOT, it does not mandate that the ALJ address conflicts between VE testimony and *other publications* from which the Administration may accept "reliable job information," which include the County Business Patterns and Census Reports (published by the Bureau of the Census); Occupational Analyses (prepared by state employment agencies); and the Occupational Outlook Handbook (published by the Bureau of Labor and Statistics).[59]    This is because the Administration

---

[54] *Dominguez v. Astrue*, 286 F. App'x 182, 188 (5th Cir. 2008) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)).

[55] *Id.* (citing 20 C.F.R. §§ 404.1566(e), 416.966(e); SSA, Hearings, Appeals, and Litigation Law Manual I–2–1–31.B.1.  (Aug. 29, 2014)) (internal quotations omitted).

[56] *Dominguez*, 286 F. App'x at 188.

[57] *Dell v. Saul*, 807 F. App'x 385, 386 (5th Cir. 2020) (citing *Biestek v. Berryhill*, 139 S.Ct. 1148, 1152 (2019); *Krell v. Saul*, 931 F.3d 582, 587 (7th Cir. 2019) ("*Biestek* clearly held that vocational experts are not categorically required to provide their underlying data")).

[58] Social Security Regulation 00-4p (Dec. 4, 2000).

[59] 20 C.F.R. § 404.1566(d).

"relies primarily on the DOT for information about the requirements of work in the national economy," and "may also use VEs. . . to resolve complex vocational issues [and] provide evidence at a hearing before an ALJ."[60]

When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[61]  The claimant has an affirmative duty to dispute VE testimony in the administrative hearing,[62] and risks waiver of any challenge to VE testimony if not raised on cross examination.[63]  When a direct and obvious conflict exists between the VE's testimony and *the DOT*, and the administrative law judge fails to explain or resolve the conflict, the probative value of the VE's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows.[64]  However, if the conflict is "tangential, implied or indirect, and it did not undergo adversarial development at the administrative hearing, the [VE's] testimony may be accepted and relied upon by the [ALJ] without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so."[65]  Even where an indirect conflict is waived because not developed at the administrative level, however, once it is raised in an action for judicial review, the court must still investigate whether the record reflects an adequate basis for doing so.[66]

---

[60] *Id*.

[61] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[62] *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and  then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.")

[63] *LeBlanc v. Shalala*, 15 F.3d 180, 1994 WL 24937, at *4 (5th Cir. 1994) (citing *Morris v. Bowen*, 864 F.2d 333, 335-36 (5th Cir. 1988)).

[64] *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009) (citing *Carey*, 230 F.3d at 146) (emphasis added).

[65] *Id*.

[66] *Id*. at 617-18 (citing *Carey*, 230 F.3d at 146).

ii.    **Plaintiff's Post-Hearing Briefs and Evidence**

The Commissioner argues that Plaintiff forfeited her right to have the ALJ provide an analysis of Plaintiff's post-hearing submission of evidence because her counsel did not contest the VE's testimony at the hearing and Plaintiff delayed in submitting evidence contrary to the VE's testimony until after the record was closed.[67]

Plaintiff's counsel neither objected to the VE's testimony identifying 69,000 telephone operator positions in the national economy nor questioned the VE on where the expert obtained that number at the hearing.  Instead, counsel questioned the VE on the decline in growth of the telephone operator position and asked one additional hypothetical.[68]  The first objection raised to the reliability of the VE's testimony was in Plaintiff's post-hearing motion filed over three weeks after the hearing, at which point the ALJ had already issued her draft opinion in the SSA online portal.[69]  The ALJ issued her final opinion on May 12, 2021, without addressing Plaintiff's post-hearing motion or the evidence attached thereto.[70]

While Social Security hearing procedures do provide for pre-hearing briefs, they do not specifically provide for a post-hearing brief.[71]  An ALJ may, but is not required to, reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence.[72]  Here, the ALJ did not re-open the hearing as she had prepared her opinion before Plaintiff's post-hearing motion for reconsideration.  As the ALJ was not obligated to reopen the record after closing it at the hearing to accept Plaintiff's new argument or evidence, she did

---

[67] ECF No. 20-1 at 4.
[68] ECF No. 15-2 at 50-51.
[69] ECF No. 15-7 at 31-39.
[70] ECF No. 15-2 at 13-22.
[71] *Carter v. U.S. Comm'r of Soc. Sec.*, No. 15-02850, 2017 WL 1304428, at *6 (W.D. La. Feb. 27, 2017) (citing 20 C.F.R. §§ 404.944, et seq.), *R&R adopted*, No. 15-02850, 2017 WL 1332722 (W.D. La. Apr. 4, 2017).
[72] 20 C.F.R. §§ 404.944, 404.935.

not commit a procedural error in not addressing Plaintiff's tardy submission, particularly where Plaintiff's counsel did not contest the evidence at the hearing.[73]

Although the ALJ declined to re-open the record to consider Plaintiff's post-hearing submission, that does not mean it went unconsidered during the administrative process. Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), a claimant may submit new evidence to the Appeals Council if it is "new," "material," and "relates to the period on or before the [ALJ's] hearing decision."[74] Plaintiff sought review by the Appeals Council,[75] submitting the same post-hearing ALJ submissions (including the 2020 BLS report on telephone operator statistics estimating that 4,630 such positions exist in the national economy), and the Appeals Council ("AC") accepted that supplemental evidence.[76]

On review, if the AC finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," the AC will then review the case.[77] Otherwise, it will deny the claimant's request for review. In deciding whether to deny the claimant's request for review, the AC must consider and evaluate any "new and material evidence" that is submitted, if it relates to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b). The AC is not, however, required to provide a discussion of the newly submitted evidence or give reasons for denying review.[78] In this case, the AC stated: "You submitted reasons that you disagree with the

---

[73] *See Carey*, 230 F.3d at 146.

[74] *Garcia v. Comm'r of Soc. Sec.*, 208 F. Supp. 3d 547, 551–52 (S.D.N.Y. 2016).

[75] ECF No. 15-8 at 2-25.

[76] *See* ECF No. 15-7 at 29-39; *see also* ECF Nos 15-2 at 6-; 25-4 at 71-72.

[77] 20 C.F.R. § 404.790.

[78] *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) ("In sum, the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, i.e., 'consider new and material evidence ... in deciding whether to grant review.'" (citation omitted)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014) ("[W]e hold that the Appeals Council is not required to explain its rationale when denying a request for review."); *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006) ("[The claimant] points to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review.")).

decision. We considered the reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the [ALJ's] decision."[79]

Although the AC did not err in declining to provide a specific discussion of the statistical evidence in its denial of review, as Plaintiff has raised a conflict regarding employment statistics in this action for judicial review, this Court must analyze whether the record contains an adequate basis for relying on the VE's testimony that telephone operator jobs exist in significant numbers in the national economy in light of the BLS evidence Plaintiff cites on appeal.[80]

### iii.    Number of Occupations Cited

In the step 5 analysis, the ALJ concluded that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. The ALJ relied on VE testimony that Plaintiff's skills would directly transfer into the telephone ("PBX") operator position, of which there are 69,000 positions nationwide.[81] The telephone operator job was the only "representative occupation[]" cited by the ALJ in her decision. Plaintiff argues that it was legally insufficient for the ALJ to rely on only one job as evidence that employment opportunities exist for the Plaintiff in significant numbers in the national economy.[82]

The Administration's Program Operations Manual System provides a framework by which ALJs should make disability determinations. There, the Administration instructs ALJs to cite three occupations that are examples of work the claimant could do given his or her impairment-related limitations and restrictions.[83] However, an exception exists—an ALJ may cite fewer than three

---

[79] ECF No. 15-2 at 2.
[80] *Gaspard*, 609 F. Supp. 2d at 617-18 (citing *Carey*, 230 F.3d at 146).
[81] ECF No. 15-2 at 21.
[82] ECF No. 17-1 at 4.
[83] POMS DI 25025.030 (C)(1).

occupations **when it is clear that jobs exist in significant numbers** within fewer than three occupations.[84]  ALJs are instructed to make this determination "using vocational specialist advice supported by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d) or other reliable sources of occupational information."[85]  The Dictionary of Occupational Titles ("DOT") is the first publication that the Administration lists as an example of a source of reliable job information.[86]

Here, the ALJ cited one occupation—telephone operator—as an example of the work Plaintiff could do given her impairment-related limitations and restrictions.[87]  She obtained testimony from the VE about this position, including an explanation of the specific skills Plaintiff had acquired from her former work that would transfer to the phone operator job.[88]  When asked how many such occupations exist in the national economy, the VE testified that 69,000 telephone operator jobs exist nationwide.[89]  The ALJ confirmed with the VE that his testimony was consistent with the DOT, an accepted source of reliable job information.[90]  It is proper for an ALJ to rely on VE testimony at step 5 to demonstrate the existence of significant number of jobs in the national economy that a claimant can perform.[91]  Moreover, "[t]he Commissioner's burden at Step 5 . . . is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform."[92]  Therefore, the ALJ's reliance on only one occupation does not,

---

[84] *Id.  See also Gaspard*, 609 F. Supp. 2d at 617 (noting that the Commissioner's burden at step five of the sequential evaluation process is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform) (citing *Evans v. Chater*, 55 F.3d 530, 532-22 (10th Cir. 1995)).
[85] *Id*. Accepted publications include the DOT, as well as publications from the Bureau of Census, State employment agencies, and the Bureau of Labor and Statistics.
[86] 20 C.F.R. § 404.1566(d)(1).
[87] ECF No. 15-2 at 21.
[88] *Id*. at 48-49.
[89] *Id*.
[90] *Id*. at 49.
[91] *Dominguez*, 286 F. App'x at 188.
[92] *Gaspard*, 609 F. Supp. 2d at 617 (citing *Evans v. Charter*, 55 F.3d 530, 532-22 (10th Cir. 1995)).  *See also Hoffman v. Astrue*, No. 09-5252, 2010 WL 1138340, at *14 (W.D. Wash. Feb. 8, 2010) ("Although the vocational expert identified only a single job, the [SSA] affords benefits only to those who cannot engage in any other kind of substantial

in and of itself, render her findings legally insufficient. The inquiry thus becomes whether it was "clear that jobs exist in significant numbers" within the one occupation cited.[93]

### iv.     <u>Work Available in Significant Numbers</u>

The Fifth Circuit has not established a bright-line rule regarding what constitutes a "significant number" of jobs for purposes of step five of the sequential analysis.[94]  Instead, the determination should be based on "common sense."[95]  In *Lirley v. Barnhart,*[96] the Fifth Circuit held that 50,000 jobs in the nation constituted a "significant number," but there was no indication that 50,000 was the minimum needed to be significant.  Courts within the Fifth Circuit and elsewhere have found numbers far lower to be "significant."[97]

The existence of 69,000 jobs certainly qualifies as a significant number under Fifth Circuit precedent.  Even if Plaintiff's BLS evidence of only 4,630 telephone operator jobs nationwide were the only evidence before the ALJ, courts have found that even that number would be significant.  For example, in *Mercer v. Halter*, in the Northern District of Texas, 500 jobs locally

---

gainful work which exists in the national economy." (quoting *Bull v. Comm'r of Soc. Sec*., No. 1:05-1232, 2009 WL 799966 (N.D.N.Y. Mar. 25, 2009) (internal citations and quotations omitted)), *R&R adopted*, No. 09-5252, 2010 WL 1138341 (W.D. Wash. Mar. 19, 2010).

[93] POMS DI 25025.030 (C)(1).

[94] *Pickar,* 2022 WL 16935255, at *8 (citing *Jackson v. Berryhill*, No. 16-2957, 2017 WL 4457539, at *3 (N.D. Tex. Sept. 11, 2017), *R&R adopted*, 2017 WL 4410812 (N.D. Tex. Oct. 3, 2017) ("The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined what constitutes a 'significant number' of jobs.")); *see also Johnson v. Astrue*, No. 11-3030, 2012 WL 5472418, at *16 (E.D. La. Oct. 5, 2012) (citing *Kelly v. Astrue*, No. 10-1198, 2011 WL 3563197, at *17 (E.D. La. June 27, 2011); *Alexander v. Comm'r. of Soc. Sec.,* No. 08–1570, 2010 WL 2571980, at *4 (W.D. La. June 8, 2010), *judgment modified on other grounds*, 2010 WL 2484219 (W.D. La. June 10, 2010), *aff'd*, 412 F. App'x 719 (5th Cir.2011).

[95] *Id*.

[96] 124 F. App'x 283, 284-85 (5th Cir. 2005).

[97] *See Mercer v. Halter*, No. 4:00-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (finding 500 jobs in Texas and 5,000 jobs nationwide significant); *Taskila v. Comm'r of Soc. Sec*., 819 F.3d 902, 906 (6th Cir. 2016) (finding 6,000 jobs nationwide significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs nationwide significant); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 579 (6th Cir. 2009) (finding 2,000 jobs significant); *Hoffman*, 2010 WL 1138340, at *13 (denying remand on the issue of whether an identified job exists in significant numbers where vocational expert testified that there were approximately 9,000 such jobs in the national economy, and noting that there is no bright line test as to what constitutes a significant number of jobs).

and 5,000 jobs nationwide was a "significant number" of jobs in the national economy.[98]  In that case, the plaintiff had acquired specialized skills from lengthy experience in the industry that left him well-qualified for the singular sedentary position identified.  For that reason, the ALJ's decision that 5,000 jobs in the nation for one position constituted a significant number of jobs was "supported by substantial evidence and not based upon legal error."[99]

As the VE testified at the hearing, after thirty years of experience in a composite position that included telephone operator duties, Bailey has acquired skills including the abilities to convey information effectively, listen actively, ask appropriate questions, and practice social perceptiveness.[100]  These skills, the VE testified, would transfer "directly into telephone operator [positions]."  Therefore, even if the Court accepted only the BLS statistics, the ALJ's finding that telephone operator jobs exist in significant numbers in the national economy would still be warranted and supported by substantial evidence.

## V.    RECOMMENDATION

An ALJ may rely on VE testimony to demonstrate the existence of significant number of jobs in the national economy that a claimant can perform and does not err in so relying where she confirms that the VE's testimony is consistent with the DOT.  Although the ALJs should look to three representative occupations to meet the step 5 burden, reliance on only one occupation suffices where it is clear that there exists a significant number of that occupation in the national economy. Here, the ALJ properly relied on VE testimony that 69,000 telephone operator jobs exist in the national economy to demonstrate the existence of a significant number of jobs.  This testimony was consistent with the DOT and, where the DOT is silent, based on the VE's decades of

---

[98] *Mercer*, 2001 WL 257842, at *5-*6.
[99] *Id*.
[100] ECF No. 15-2 at 48.

experience as a vocational rehabilitation counselor, education, and performance of job analyses of the telephone operator position specifically.

The ALJ did not err in declining to consider Plaintiff's post-hearing submission of BLS occupation statistics, nor did the Appeals Council err in failing to specifically address the new evidence in declining to grant review. Even if the BLS statistics were the only evidence available as to available number of positions in the national economy, the ALJ's conclusion would still be supported by substantial evidence. Plaintiff has thus failed to demonstrate that the ALJ's decision is not supported by substantial evidence or that she committed legal error. Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 17) be **DENIED**, the Commissioner's Cross-Motion for Summary Judgment (ECF No. 20) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[101]

Dated this 8th day of December, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[101] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).